TRANSCRIBED FROM DIGITAL RECORDING

|   |   |
|---|---|
| 1 | IN THE UNITED STATES DISTRICT COURT |
| 2 | FOR THE DISTRICT OF NEVADA |

```
UNITED STATES OF AMERICA,     )
                              ) Case No. 2:18-cr-00037-JAD-NJK
            Plaintiff,        )
                              ) Las Vegas, Nevada
vs.                           ) March 6, 2018
                              ) Courtroom 3A
STEVEN A. HOLPER, M.D.,       )
                              )
                              ) Recording method:
            Defendant.        ) Liberty
_____) 9:12 a.m. - 9:28 a.m.
                                ATTORNEY CONFIRMATION HEARING
```

## *CERTIFIED COPY*

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE NANCY J. KOPPE
UNITED STATES DISTRICT COURT MAGISTRATE

APPEARANCES:

For the Plaintiff:     *KILBY C. MACFADDEN, AUSA*
                       United States Attorney's Office

For the Defendant:     *MONIQUE N. KIRTLEY, AFPD*
                       Federal Public Defender's Office

Recorded by:      Ari Caytuero

Transcribed by:   Amber M. McClane, CCR 914
                  United States District Court
                  333 Las Vegas Boulevard South, Room 1334
                  Las Vegas, Nevada 89101
                  AM@nvd.uscourts.gov

Proceedings recorded by electronic sound recording.
Transcript produced by mechanical stenography and computer.

AMBER M. McCLANE, CCR 914
(702) 384-0429

TRANSCRIBED FROM DIGITAL RECORDING

```
 1        LAS VEGAS, NEVADA; TUESDAY, MARCH 6, 2018; 9:12 A.M.
 2                            --o0o---
 3                       P R O C E E D I N G S
 4        COURTROOM ADMINISTRATOR:  All rise.  Please be
 5   seated.
 6        This is the time set for an attorney confirmation
 7   hearing in the matter of United States of America versus
 8   Steven A. Holper, Case No. 2:18-cr-0037-JAD-NJK.
 9        Counsel, please state your name for the record.
10        MS. MACFADDEN:  Good morning, Your Honor.  Kilby
11   Macfadden on behalf of the United States.
12        THE COURT:  Good morning, Ms. Macfadden.
13        MS. KIRTLEY:  Good morning, Your Honor.  Monique
14   Kirtley with the Federal Defender's Office on behalf of
15   Mr. Holper who is present and not in custody.  And we do
16   apologize for running late, Your Honor, this morning.
17        THE COURT:  All right.  Good morning, Ms. Kirtley,
18   and good morning, Mr. Holper.
19        The -- this hearing was set for an attorney
20   confirmation hearing.  The defendant was going to determine
21   whether he was going to hire private counsel.  What occurred
22   there?
23        MS. KIRTLEY:  Yes, Your Honor.  Mr. Holper contacted
24   five attorneys:  Leventhal, Russ Marsh, Gentile.  And they
25   wanted $100,000 just to do this case, and he can't afford to
```

```
 1   do that.  His income has changed since he first did his
 2   financial affidavit.  He has given up -- or he has put his
 3   medical license on hold, which he will not get back until
 4   after the -- this case is over with.  He has no income coming
 5   in except for his accounts receivable, which he gets from I
 6   believe it's accident cases?
 7              THE DEFENDANT:  Yes.
 8              MS. KIRTLEY:  From accident cases.
 9          Next week he's going to go to social security to find
10   out if he -- how much social security he will be able to
11   receive.  He does not know how much he'll receive at this
12   point in time.  So right now his income is basically zero.
13              THE DEFENDANT:  Except for my accounts receivable.
14              MS. KIRTLEY:  Yeah, for -- except for, I said, his
15   accounts receivable, which is around 30- to $40,000.
16              THE COURT:  Per year?
17              MS. KIRTLEY:  Per year?
18              THE DEFENDANT:  Well, personal injury is iffy.
19          May -- I'd like to speak.  May I speak?
20              THE COURT:  Yes.
21              THE DEFENDANT:  I don't know how much you know about
22   personal injury, but it's -- it's iffy.  There are attorneys
23   that will pay you half, you know, 50 cents on the dollar.  So
24   you just -- you have to cross your fingers and hope that
25   you -- you get a -- a decent settlement.
```

1    **THE COURT:** On liens. Right?

2    **THE DEFENDANT:** Liens, yes.

3    **THE COURT:** Yeah.

4    **THE DEFENDANT:** So I can't depend on -- I mean,
5    that's all I have now is -- are -- are liens, and I'm just
6    guessing maybe 30, 40,000. But that might come to 15 or 20 in
7    reality. I can't say for sure.

8    **MS. KIRTLEY:** And his wife doesn't work either, Your
9    Honor.

10   **THE COURT:** Well, the financial affidavit before the
11   Court is very different than what is being represented now. A
12   new financial affidavit will have to be filled out and
13   presented to the Court, because the Court is inclined -- and
14   certainly, in the last financial affidavit, the Court is
15   inclined to impose some costs and fees on the defendant. And
16   that is what's before the Court at this point.

17   **MS. KIRTLEY:** We can do a new financial affidavit,
18   Your Honor. I think he's -- his license wasn't on hold or he
19   didn't voluntarily put his license on hold I -- I believe at
20   the last hearing --

21   **THE DEFENDANT:** At the time, my license was intact.

22   **MS. KIRTLEY:** So now that's what's changed his
23   income. So we can fill out a whole new one for -- for the
24   Court.

25   **THE COURT:** And if your license is on hold, how are

```
 1  you able to do personal injury cases?
 2          MS. KIRTLEY:  I think it's not what he's doing now.
 3  But let me check to make sure, Your Honor.
 4          Is this from the past?
 5          THE DEFENDANT:  Past.
 6          MS. KIRTLEY:  It's from the past, Your Honor.
 7          THE COURT:  All right.
 8          MS. KIRTLEY:  May I approach?
 9          THE COURT:  Yes.
10      (Counsel conferring.)
11          MS. KIRTLEY:  If I may, Your Honor?
12          THE COURT:  Yes.
13          MS. KIRTLEY:  Just real quickly, Your Honor.  There's
14  one item I wasn't sure where to place.  He does have a
15  business account, but it's only for his business; it's not his
16  personal use.  And that account does have about $30,000 in it
17  that he pays his employees with that.
18          THE COURT:  Okay.  All right.  The Court has been
19  provided a financial affidavit.  Mr. Holper, it has your name
20  at the top and a signature at the bottom.
21          Do you recognize this signature?
22          THE DEFENDANT:  Yes.
23          THE COURT:  And you understand that you signed it
24  under penalty of perjury?
25          THE DEFENDANT:  Yes.
```

TRANSCRIBED FROM DIGITAL RECORDING

1  **THE COURT:** Is everything on this affidavit accurate
2  and complete?
3  **THE DEFENDANT:** To my knowledge, yes.
4  **THE COURT:** All right. And you understand that you
5  could be penalized for perjury if you knowingly provided false
6  information on the affidavit?
7  **THE DEFENDANT:** Yes.
8  **THE COURT:** All right. The Court notes that some of
9  the information is materially different from the last
10 affidavit.
11 *(Conferring counsel.)*
12 **THE COURT:** All right. The Court will allow the
13 Federal Public Defender -- will appoint the Federal Public
14 Defender to remain on this case because the Federal Public
15 Defender was only appointed as -- in an interim basis before.
16 The Court is going to order that the defendant pay a thousand
17 dollars a month to defray those attorney costs and fees.
18     Is there -- Ms. Macfadden?
19 **MS. MACFADDEN:** Yes, Your Honor. If I may just make
20 the record. Again, as the Government does not have access --
21 **THE COURT:** Right.
22 **MS. MACFADDEN:** -- to the financial affidavit, of
23 course; however, as an officer of the court, I have done a
24 fairly extensive financial investigation regarding Dr. Holper
25 and what his assets are. And his receivable income for the

1  year of 2016 was -- his taxable income was over $300,000.
2           During the search of his house, $38,000 cash was
3  find -- found.  That was only two and a half weeks ago.  In
4  addition, he has several substantial assets, including two
5  Mercedes, a Ford, a Porsche.  He has, again, a cabin in Utah.
6           And, Your Honor, he owns the practice and employs a
7  physician's assistant as well who he pays and who is still
8  making money.
9           In addition, in Nevada, a medical license is a binary
10 thing; you either have one or you don't.  So him putting it on
11 hold is self-imposed because he's allowed to practice medicine
12 based on the detention hearing.  He can still prescribe all
13 his controlled substances, and he can still practice medicine.
14 Not taking a position on that.  I just wanted to make the
15 Court aware.  And the medical board has not given us any
16 information to the contrary regarding that.
17          Your Honor, I do have a summary of his taxes that I
18 can provide to the Court.  It's just very troubling to me --
19 or I just wanted to -- to express, based on what is stated
20 and, again, what I don't have access to, that he had over
21 $1.1 million in assets, and that was just what he was
22 claiming, again, two and a half week ago.
23          **THE COURT:**  Right.  If you could pass up the summary
24 of the taxes.
25          **MS. MACFADDEN:**  Yes, Your Honor.

1           May I approach, Your Honor?
2           **THE COURT:**  Yes.
3       *(Whereupon, Government's Exhibit 1 was marked.)*
4           **THE COURT:**  And, for the record, a copy has been
5   provided to the defense.  It's marked Government Exhibit 1.
6       *(Conferring counsel.)*
7           **THE COURT:**  All right.  Based on this exhibit and
8   based on the financial affidavits, the Court is going to amend
9   its order.  The defendant will have to pay $2,000 a month
10  toward attorney cost -- attorney fees and costs.
11          **MS. KIRTLEY:**  If I may, Your Honor?  If we have --
12  because I -- I wasn't prepared for this.
13          **THE COURT:**  Yes.
14          **MS. KIRTLEY:**  If we have other documentation that
15  shows that his income has reduced -- because even on this,
16  2013, 2014, 2015, and 2016, it looks like his wages go up and
17  down, and now we're at a point where he doesn't have any wages
18  at all.  If we are able to provide the Court with further
19  documentation in regards to how much he can pay per month, may
20  we submit that to the Court?
21          **THE COURT:**  You may submit it to the Court.  It may
22  or may not make a difference.  He does have -- as the
23  Government stated, he does have an ownership interest in the
24  business.  So whether he's practicing medicine or not, there
25  is an issue of income.  But at this point -- and, of course,

TRANSCRIBED FROM DIGITAL RECORDING

```
 1  you may submit anything you want to the Court.  The Court
 2  will --
 3          MS. KIRTLEY:  Right.
 4          THE COURT:  -- always address it.  But, at this
 5  point, the order is going to be $2,000 a month.
 6          MS. KIRTLEY:  Okay.  Thank you, Your Honor.
 7          THE COURT:  All right?  Thank you, everyone.
 8          COURTROOM ADMINISTRATOR:  All rise.
 9      (Proceedings adjourned at 9:28 a.m.)
10                          * * *
11   I, AMBER M. McCLANE, court-appointed transcriber, certify
12  that the foregoing is a correct transcript transcribed from
13  the official electronic sound recording of the proceedings in
14  the above-entitled matter.
15
16  /s/ Amber M. McClane                    3/26/2018
        Amber M. McClane, CCR 914           Date
17
```