**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| United States of America,<br><br>    Plaintiff<br><br>v.<br><br>Steven A. Holper,<br><br>    Defendant | Case No.: 2:18-cr-00037-JAD-NJK<br><br>**Order Denying Emergency Motion for Compassionate Release, Granting Motions for Leave to File Sur-reply and Supplement, and Granting Motions to Seal Medical Records and Filings**<br><br>[ECF Nos. 77, 78, 85, 88, 89] |

Defendant Steven Holper has served roughly one year of his 41-month custodial sentence after pleading guilty to distributing a controlled substance. He asks this court to grant him compassionate release or home confinement because he is 68 years old; suffers from a host of ailments, including osteomyelitis, coronary artery disease, and hypertension; and may have recently suffered a stroke—all of which he argues put him at a higher risk for contracting SARS-CoV-2, the virus that causes COVID-19.[1] Despite my sympathy for Holper's condition, I deny his motion because he hasn't shown that such relief is warranted.

## Background

In December 2018, Holper pled guilty to distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).[2] In his plea agreement, Holper, who was a licensed physician in Nevada, admitted that he provided unprescribed, highly potent opioids, like fentanyl, to his patients outside of his professional practice.[3] One of those patients died of an

---

[1] ECF Nos. 77 (motion); 83 (reply); 90 (supplement) (sealed).
[2] ECF No. 50 at 2 (plea agreement).
[3] *Id.* at 4–5.

overdose.[4]  At his sentencing hearing, Holper and his witnesses described his serious medical conditions, his age, his character, and the likelihood of his reoffending.[5]  And Holper underscored his desire to help his patients, believing that he "legitimately felt that [he] was able . . . to treat these patients from an off-label perspective."[6]  But he disclaimed responsibility for his patient's death, implausibly maintaining that he believed she wanted the packaging, and not the fentanyl in it, to create collage art.[7]  I explicitly considered these facts in determining Holper's sentence and held that he should serve 41 months in custody, as opposed to the 71 months requested by the government and the 135 months recommended by the United States Probation Office.[8]  The Bureau of Prison's (BOP) website reflects September 1, 2022, as his release date.[9]

In his motion and supplemental filing, Holper asks the court to grant him compassionate release or home confinement.[10]  In addition to the ailments he described at sentencing, which continue unabated, Holper asserts that he has suffered a stroke-like event and that his heart disease, hypertension, hyperlipidemia, and osteomyelitis have worsened, putting him at risk of death from COVID-19.[11]  He also notes that he requires assistance to walk.[12]  And while Holper is currently housed at a medical prison, he believes that prison is unable to provide him adequate

---

[4] *See* ECF No. 62 at 4 ("On March 12, Patient A retrieved Subsys canisters from Holper's residence in the late morning.  Later that day, Patient A died.").

[5] *See, e.g.*, ECF Nos. 73 at 37:9–44:24; 89 at 13–19 (sealed).

[6] ECF No. 73 at 44.  During his time in prison, Holper has begun to grapple with the "repercussions of trying to help."  *See* ECF No. 89 at 11 (quoting ECF No. 77, Ex. B).

[7] ECF No. 73 at 44:15–24.

[8] *Id.* at 85:6–92:1.

[9] *Find an Inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited October 2, 2020).

[10] *See* ECF Nos. 77, 89.

[11] ECF Nos. 77 at 13–14; 90 at 3–4 (sealed).

[12] ECF No. 77 at 14.

treatment and is at heightened risk of an explosion of COVID-19 cases.[13]  Holper asks to be released to his son's home, to be near his family.[14]  The government opposes his motion, arguing that his medical conditions do not warrant release because this court had already considered most of his proffered bases for compassionate release when it crafted his first sentence, he has served very little of his deserved time, and Federal Medical Center, Rochester (FMC Rochester) is well-equipped to handle the COVID-19 threat.[15]

## Discussion

A sentencing court's ability to modify or reduce a sentence once imposed is seriously limited.[16]  The compassionate-release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018,[17] is an exception to this limitation.  It allows the sentencing judge to reduce a sentence based on "extraordinary and compelling reasons" after the defendant has failed to get the BOP to bring such a motion on his behalf.[18]  The court must consider the factors in 18 U.S.C. § 3553(a) "to the extent that they are applicable," and any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission."[19]  The court may entertain an inmate's request for compassionate release under 18 U.S.C.

---

[13] ECF No. 83 at 9.  As of October 2, 2020, Rochester FMC has had 53 positive COVID-19 cases—of the 41 inmate cases, 16 have recovered and of the 10 staff cases, two have recovered. There have been no reported deaths.  *Covid-19 Coronavirus*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Oct. 2, 2020).

[14] ECF No. 77, Ex. C at 1.

[15] *See* ECF No. 82.

[16] *See United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (citing Federal Rules of Criminal Procedure 35 and 36); 18 U.S.C. § 3582(c).

[17] The First Step Act of 2018, § 603(b), Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).

[18] 18 U.S.C. § 3582(c)(1)(A)(i).

[19] *Id*.

3

§ 3582(c)(1)(A)(i) only after he has exhausted the administrative rights and procedures provided by the BOP.[20]  Both parties agree that Holper's motion is ripe for review and that he has provided extraordinary and compelling reasons justifying my consideration of a sentence reduction.[21]

**A.    Consideration of the applicable § 3553(a) factors**

Even if extraordinary and compelling reasons exist to justify Holper's early release, I still deny his motion because the applicable § 3553(a) factors do not justify reducing his sentence by roughly 70%.  During sentencing, I carefully evaluated the § 3553(a) factors to reach a sentence that I found was sufficient but not greater than necessary to accomplish the goals and objectives of sentencing.  As I noted then, Holper's crimes are serious, and his standing and role as a doctor in the community only compound their seriousness.[22]  We hold physicians to a "higher standard" and Holper betrayed his community's trust by "essentially [becoming] a drug supplier."[23]  I also remain troubled by Holper's attitude toward his crime.  At sentencing, Holper expressed little remorse over his conduct.[24]  According to the letters filed in support of his motion, his attitude has not demonstrably changed; he continues to blame other medical providers for his patient's

---

[20] *Id.*

[21] ECF No. 82 ("The government agrees that the Court has authority to decide this Motion because Defendant has satisfied the statutory requirements for filing it, and that 'extraordinary and compelling reasons' exist to consider a sentence reduction . . . .").

[22] ECF No. 73 at 90:10–22.

[23] *Id.*

[24] *Id.* at 89:21–25.

death and seemingly denies that he gave her the opioids.[25]  Finally, I recall with trepidation Holper's post-sentencing behavior, which required his placement in custody prior to surrender.[26]

I do not overlook the positive information for Holper on the other end of the § 3553(a) spectrum.  Holper has an extensive support system, which includes his devoted family members and friends.[27]  I am also cognizant of Holper's declining health, which includes the potential stroke he suffered after filing his motion.[28]  But I already considered his serious and extensive medical conditions at his sentencing, when I provided a downward variance and sentenced him to 41 months in prison.[29]  I am also not persuaded that FMC Rochester's facilities are suspect or that he is receiving inadequate medical care, as Holper claims.[30]  The BOP has implemented a detailed COVID-19 response plan for federal inmates, and the low number of reported cases at FMC Rochester suggests that the plan is effective there.[31]  The BOP's website reflects that while 25 inmates and ten staff-members have tested positive for SARS-CoV-2, this is not unexpected, given that it's a medical facility, and there have been no reported deaths from COVID-19.[32]

---

[25] *See* ECF No. 77, Ex. B at 1 (wherein his daughter represents that Holper "has spent the past 280 plus days reliving the unfortunate and truly sad event that occurred with his medical patient when she overdosed using medication from her prescribing doctor and coming across leftover medication from my dad").

[26] *See* ECF No. 83 at 12 n.37 (describing Holper's seeming threats of murder and suicide as a "bit of a rocky road" triggered by his wife's death).

[27] ECF No. 77 at 20.

[28] ECF No. 90 at 2.

[29] ECF No. 73 at 91:14–16.

[30] ECF No. 83 at 6–10.  Holper's assertions that "zero cases one day can easily turn into an outbreak overnight" is speculative and would apply to the entire prison system, effectively requiring the release of all prisoners with comorbidities.

[31] *BOP Implementing Modified Operations,* FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Oct. 2, 2020).

[32] *See COVID-19: Coronavirus,* FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Aug. 19, 2020).

Holper has provided no evidence that FMC Rochester is unable to handle or extinguish a rise in COVID-19 cases or implement proper safety protocols to limit its spread. And Holper appears to be receiving adequate, if not ideal, treatment for his medical conditions.[33]

In sum, the nature and circumstances of the offense on which Holper is currently incarcerated; his history and characteristics; the need for his sentence to reflect the seriousness of the offense, provide just punishment, afford adequate deterrence, and protect the public from further crimes; and the kinds of sentences available all weigh against releasing him after serving just 12 months of his 41-month sentence. So I deny his motion.

## Conclusion

IT IS THEREFORE ORDERED that Defendant Steven Holper's Emergency Motion for Order Reducing Sentence or Modifying Judgment under 18 U.S.C. § 3582(c)(1)(A)(i) and Authorizing Any Remaining Portion of His Sentence to be Served on Home Confinement **[ECF No. 77] is DENIED.**

IT IS FURTHER ORDERED that the Government's unopposed motion to file a sur-reply and Holper's unopposed motion to supplement his reply **[ECF Nos. 85, 89] are GRANTED.**

IT IS FURTHER ORDERED that Holper's unopposed motion to file medical records and his supplement under seal, and the Government's unopposed motion to file his medical records

---

[33] *C.f.*, *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012) (providing that the Eighth Amendment guarantees access to medical care and is violated when prison officials show "deliberate indifference" to the serious medical needs of an inmate), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014).

under seal **[ECF Nos. 78, 89] are GRANTED.  The Clerk of Court is directed to maintain the seal on ECF Nos. 79, 87, and 90.**

_____
U.S. District Judge Jennifer A. Dorsey
October 5, 2020